UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY L. CHILDRESS,

                Plaintiff,                Case No. 2:14-cv-12399
                                          District Judge Victoria A. Roberts
v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (DE 11) AND TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DE 12)**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 11), **GRANT** Defendant's motion for summary judgment

(DE 12), and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT:**

       Plaintiff, Tracy L. Childress, brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for disability insurance benefits

(DIB). This matter is before the United States Magistrate Judge for a Report

and Recommendation on Plaintiff's motion for summary judgment (DE 11),

1

the Commissioner's cross motion for summary judgment (DE 12), and the administrative record (DE 8).

### A.    Background

Plaintiff protectively filed her application for DIB on March 22, 2010, alleging that she has been disabled since August 10, 2007, at age 39.  R at 263-265; *see also* R at 210-211, 212-214.  According to her disability report, Plaintiff's ability to work is limited by a torn rotator cuff in her right shoulder, bulging discs, a pinched nerve in her right shoulder/neck/back, a ruptured disc in her neck which affects her right shoulder, and asthma.  *See* R at 267; *see also* R at 351.  On July 29, 2010, disability examiner Debbi Marr determined that Plaintiff was not disabled at the initial level.  R at 97-107; *see also* R at 138-141.

Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  *See* R at 142-148.  ALJ John J. Rabaut held a hearing on June 23, 2011, at which Plaintiff was represented by counsel and vocational expert (VE) Harry Cynowa testified.  R at 58-96.  On July 12, 2011, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, §§ 216(i) and 223(d).  R at 108-123.

On or about August 16, 2011, Plaintiff, via counsel, requested review of the ALJ's decision.  R at 170.  On September 27, 2012, the Appeals

Council remanded the case to the ALJ.  R at 124-129.  In so doing, the

Appeals Council noted that the July 12, 2011 RFC was "for less than the full

range of sedentary work."  R at 126.

ALJ Rabaut held another hearing on March 21, 2013, at which

Plaintiff was represented by counsel and VE Annette Holder testified.  R at

31-57.  Subsequently, on April 12, 2013, the ALJ determined that Plaintiff

was not disabled within the meaning of the Social Security Act, §§ 216(i)

and 223(d).[1]  R at 11-30.

Plaintiff requested review of the hearing decision on May 2, 2013.  R

at 8-10.  On May 30, 2014, the Appeals Council denied Plaintiff's request

for review.  R at 1-6.  Thus, ALJ Rabaut's April 12, 2013 decision became

the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 19, 2014.  DE

1.  The Commissioner filed an answer on August 22, 2014, along with a

copy of the administrative record.  DE 7, DE 8.[2]

---

[1] *See* 42 U.S.C. § 416(i) and 42 U.S.C. § 423(d).

[2] This case was originally assigned to Judge Roberts and Magistrate Judge
Whalen.  This case was referred to Magistrate Judge Whalen for pretrial
matters.  DE 3.  However, on January 13, 2015, the case was reassigned
from Magistrate Judge Whalen to me.  DE 13.

**B.      Plaintiff's Medical History**

Plaintiff alleges that she has been disabled since August 10, 2007, on which date Plaintiff fell while working at Marygrove College. *See* R at 351. Plaintiff's medical records span the period of time from August 10, 2007 to February 20, 2013 and are extensive. *See* R at 330-784 (Exhibits 1F - 22F). The ALJ considered at least 32 of these records, which will be discussed below, as required.

**C.      Hearing Testimony (March 21, 2013)**

**1.      Plaintiff's Testimony**

Plaintiff testified that she was about the same as the last time she saw the ALJ. On a typical day, she gets up as normal and does the little bit she can. According to Plaintiff, her medication keeps her "out" and "down" a lot. R at 36. She has taken Vicodin and Meclizine since her injury and started Morphine in 2012. R at 36-37. She also takes 800 mg Motrin and another pill "for the nerve to counteract the Morphine and the Vicodin." R at 37.

Plaintiff's daughters live with her and help her with personal care. Once she gets going in the morning, she just relaxes and sleeps the rest of the day. R at 37. Plaintiff naps about twice per day for an hour or two, and, because of her medication, she could nod off at any moment. R at 38. She

no longer drives, and her husband takes her around.  R at 38-39.  If she

needs to, she goes to the store.  She can push the cart but is not able to do as

she once did.  R at 39.  At the time of the hearing, she had had a cane, which

had been prescribed, for approximately two years.  R at 39-40.  Plaintiff

testified that she could stand for approximately 15 minutes before having to

sit down and could sit for about 15 minutes before she has to get moving a

little bit.  R at 40-41.

Upon further examination by her counsel, Plaintiff testified that she

gets headaches which derive from the neck issue.  These headaches require

her to lay down, independently of her other problems.  R at 41.  She takes

Meclizine for a headache.  R at 41-42.  She gets these headaches once or

twice per week at any given time.  When one occurs, she may lay down from

approximately 30 minutes to 2 hours.  R at 42.  Plaintiff also testified that

she is right hand dominant and is still having problems with her right hand.

R at 42-43.  She experiences numbness and tingling, so her right hand grip

or grasp is very weak.  Plaintiff also has difficulty with holding onto objects;

when she feels weakness coming on, she switches hands.  The weakness is

something that comes and goes.  R at 43.

## 2.      Vocational Expert Testimony

VE Annette Holder testified that, under the ALJ's hypothetical,
Plaintiff could not preform the past work as a home care attendant, cashier
and housekeeper/cleaner, as all the past work was light or medium.  R at 45-
47.  The VE further testified that, at the sedentary level, the hypothetical
Plaintiff could perform the unskilled work of an assembler, a sorter and a
general office clerk.  R at 47-48.  The VE reduced the numbers of such
available jobs to reflect her five pound lifting limitation.  R at 48.  The VE
also took into consideration the ability to sit or stand while performing work
tasks and the ability to use a cane while working.  R at 48-49.  When adding
the requirement of missing unscheduled partial days, the VE testified that it
would preclude all competitive employment at full time RFC.  R at 49-50.

Upon further examination by counsel, the VE testified that the
additional requirement of using a handheld device, which the Undersigned
presumes to be a cane, not just for prolonged ambulation and/or uneven
terrain, but also for standing, with a sit/stand option, would eliminate the
assembler job, which requires two hands, regardless of whether the worker is
sitting or standing.  R at 51.  For example, the VE would reduce the number
of sorter jobs to 900 in Southeast Michigan.  R at 51-52.  When counsel
inquired about changing handling and fingering from frequent to occasional,

6

the ALJ testified that the jobs she identified would be eliminated.  R at 53-54.

**D.    The Administrative Decision (April 12, 2013)[3]**

**1.    Step One Analysis:  Gainful Activity**

On April 12, 2013, ALJ Rabaut issued his decision.  At Step 1 of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 10, 2007, the alleged onset date. R at 17.

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### 2.      Step Two Analysis:  Impairments

At Step 2, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine, lumbosacral radiculopathy and cervical radiculopathy, right rotator cuff tear with internal derangement status post subacromial decompression, and asthma.  R at 17-18.

In addition, the ALJ noted that Plaintiff had been diagnosed with the non-severe impairment of baseline anxiety disorder and opined that Plaintiff's anxiety did not significantly limit her ability to perform basic work activities.  In forming this opinion, the ALJ considered, among other things, the January 13, 2010 impression of Nancy Juopperi, D.O. that Plaintiff had a baseline anxiety disorder (R at 518-520); the August 10, 2007 to September 19, 2009 records of Henry Ford Wyandotte Hospital (R at 451-517); the June 2010 note Arpan R. Bhakta, M.D. that Plaintiff had normal mood and affect, and her behavior was normal (R at 686); and a lack of evidence of psychological treatment since the alleged onset date.  Moreover, the ALJ gave great weight to the July 29, 2010 State agency psychological consultant's determination.  R at 98-107.

8

2:14-cv-12399-VAR-APP   Doc # 14   Filed 06/24/15   Pg 9 of 38   Pg ID 901

### 3. Step Three Analysis: The Listings

At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. R at 18-19.

### 4. Step Four Analysis: The RFC

At Step 4, the ALJ found that Plaintiff had the RFC to perform sedentary work, except Plaintiff: can only lift up to 5 pounds; must be able to alternate between sitting and standing at will, but approximately every 15 minutes; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs, balancing, stooping, crouching, or kneeling; no crawling; no constant (i.e. frequent) reaching; no overhead reaching or handling; frequent, but not constant, handling, fingering, and feeling; limited to jobs allowing use of a handheld assistive device for prolonged ambulation or uneven terrain; avoid concentrated exposure to extreme cold or heat, wetness, humidity, environmental irritants, poorly ventilated areas, excessive vibration, and moving machinery; avoid all exposure to unprotected heights and hazards; and work must be limited to only occasional decision making and only occasional changes in the work setting. R at 19-23.

### 5.   Step Five Analysis:  Jobs That Can Be Performed

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as an assembler, with 1,000 jobs in Southeast Michigan; sorter, with 1,200 jobs in Southeast Michigan; and general office clerk, with 1,000 jobs in Southeast Michigan. R at 24-25.  Here, the ALJ relied upon the March 21, 2013 testimony of VE Holder (R at 44-56) and the Dictionary of Occupational Titles (DOT).

### E.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

10

reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. §

11

405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

In her motion for summary judgment, Plaintiff asserts three statements of error:  (1) the ALJ did not properly assess Plaintiff's complaints of pain, limitations and credibility, (2) the ALJ failed to give proper weight to the opinion and assessment of Plaintiff's treating medical source, and (3) the VE's testimony at the 2013 hearing demonstrates that there were no jobs that Plaintiff could perform if she required a cane while standing.  DE 11 at 20-32.

The Commissioner opposes Plaintiff's motion, asserting that she is entitled to a grant of summary judgment, because:  (1) the ALJ's credibility determination is supported by substantial evidence, (2) the ALJ properly

evaluated the medical opinions of record, and (3) the ALJ's Step 5

determination is supported by substantial evidence.  DE 12 at 10-23.

　　　The Undersigned will address each argument in turn.

### 1.　　Credibility Assessment

　　　Plaintiff's first statement of error is that the ALJ did not properly

assess Plaintiff's complaints of pain, limitations and credibility.  DE at 20-

26.  The United States Court of Appeals for the Sixth Circuit provides the

following with regard to credibility assessments:

> Where the symptoms and not the underlying condition form the
> basis of the disability claim, a two-part analysis is used in
> evaluating complaints of disabling pain. 20 C.F.R. §
> 416.929(a); *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.
> 2001); *Felisky v. Bowen,* 35 F.3d 1027, 1038–39 (6th Cir.
> 1994). First, the ALJ will ask whether there is an underlying
> medically determinable physical impairment that could
> reasonably be expected to produce the claimant's symptoms. 20
> C.F.R. § 416.929(a). Second, if the ALJ finds that such an
> impairment exists, then he must evaluate the intensity,
> persistence, and limiting effects of the symptoms on the
> individual's ability to do basic work activities. *Id.*

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

　　　In his April 12, 2013 decision, the ALJ found that "[a]fter careful

consideration of the evidence, . . . claimant's medically determinable

impairments could reasonably be expected to cause the alleged symptoms;

however, the claimant's statements concerning the intensity, persistence, and

limiting effects of these symptoms are not entirely credible . . . ."  R at 20.

The ALJ then discussed the medical records, activities of daily living, work history since the alleged onset date, and receipt of unemployment benefits. R at 20-23.

Here, the Court should conclude that the ALJ's assessment of Plaintiff's credibility as non-persuasive (R at 23) is supported by substantial evidence:

### a.    Plaintiff's representations

Plaintiff argues that "the overall record demonstrates that the ALJ was not justified in discounting the plaintiff's testimony about the severity of her symptoms and limitations."  Plaintiff contends that her testimony about pain, limited range of motion, tingling and weakness, dizziness, cramping and spasm "has been persistent and consistent for more than 7 years."  DE 11 at 21.  According to Plaintiff, "the ALJ['s] recitation of sporadic and extremely limited activities demonstrates the extent that the ALJ skewed the record to find some reason to discount the plaintiff's credibility about her limitations and symptoms."  DE 11 at 22.

Specifically, in support of her claim that her limited daily activities do not demonstrate a capacity to perform work 8 hours per day, Plaintiff points to the litany of symptoms and limitations listed in her May 18, 2010 SSA Function Report (R at 288-295), including her inability to use her right arm,

neck mobility problems (R at 293), dizziness (R at 288), the need for assistance with her daily chores and activities (R at 289-290), and dizziness and drowsiness caused by her medications (R at 295).  DE 11 at 22-23.

Plaintiff also specifically cites her June 23, 2011 testimony in support of her claims of: numbness in her right arm and right leg (R at 63), tingling in her right hand and fingers (R at 73), week grip or grasp in her right hand (R at 77), daily pain of 6/10 to 10/10 (R at 65), ineffectiveness of medications to completely reduce her pain, (R at 65-66), grogginess from her headache medicine (R at 78), daily dizziness, and discontinuation of physical therapy due to lack of improvement for her back (R at 67). Plaintiff also cites specific portions of her March 21, 2013 testimony, noting a lack of improvement in her symptoms since she testified in 2011, and being on Vicodin, Morphine and Meclizine (R at 36). She naps twice a day for an hour or two (R at 38, 41), enjoys daytime television (R at 71), and her daughters help her with personal needs (R at 37). She further reports being prescribed a cane approximately two years earlier (R at 39-40). DE 11 at 23-24.

Plaintiff contends that "the ALJ's reasons to discount the plaintiff['s] testimony about her abilities and limitations is defective and contrary to the evidence of record."  DE 11 at 26.  However, the ALJ did consider the May

18, 2010 function report (R at 288-295 [Ex. 5E]) and Plaintiff's testimony in his decision.  R at 23.[4]  He also considered "all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence." (R at 19). As the Commissioner points out (R at 12 at 10 n.1), the ALJ credited some of Plaintiff's statements.  For example, Plaintiff testified on March 21, 2013 that she could stand or sit for approximately fifteen minutes (R at 40), and the ALJ's RFC finding includes the limitation that Plaintiff "must be able to alternate between sitting and standing at will, but approximately every 15 minutes . . . ."  R at 19.  On the other hand, the ALJ also considered the April 8, 2010 SSA field office disability report (R at 263-265 [Ex. 2E]), which notes that the interviewer did not observe/perceive difficulty with breathing, sitting, standing or walking, and makes no mention of a cane (R at 264).  R 23.  This was entirely permissible and appropriate.[5]

---

[4] Plaintiff's May 18, 2010 SSA Function Report (R at 288-295) appears to have been completed by Plaintiff's daughter (*see* R at 296-297).  Whether the ALJ was pointing to June 23, 2011 testimony (R at 58-96) or March 21, 2013 testimony (R at 31-57) in his credibility analysis is unclear.  R at 23.

[5] "Social Security regulations provide that the Commissioner will consider opinion evidence from third-parties, including employees of the agency, when evaluating the credibility of a claimant's allegations of symptoms, and when assessing RFC for the claimant."  *Perkins v. Colvin*, No. 12-2219, 2013 WL 4517295, 4 (D. Kan. Aug. 26, 2013) (citing 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4); 404.1529(c)(3), 416.929(c)(3)); *see also*

**b.     Medical records**

Plaintiff asserts that the objective evidence includes: the MRIs of the cervical spine performed on January 10, 2008 (R at 515), January 12, 2010 (R at 510, 569) and January 19, 2011 (*see* R at 742); the MRIs of the right shoulder performed on June 28, 2009 (R at 511) and March 17, 2010 (R at 579); and the EMG of the right upper extremity performed on April 27, 2010 (R at 577-578).  DE 11 at 21.

However, as the Commissioner points out (DE 12 at 11-12): **(a)** the March 18, 2008 Progressive Rehab Network notes indicate that Plaintiff had frequent cancellations (R at 20, R at 380); **(b)** Dr. Bhakta's September 12, 2007 notes indicate that Plaintiff could return to work on October 1, 2007 (R at 20, R at 545); **(c)** the June 30, 2010 post operation evaluation notes state that Plaintiff presented without complaints (R at 21, R at 680); and, **(d)** August 8, 2012 notes of Dr. Kurz indicate that injections had helped Plaintiff "quite a bit" but were starting to wear off after lasting "maybe a couple of months," and that right shoulder range of motion was "limited but a little bit improved." (R at 21, R at 760).

---

*Odette v. Commissioner of Social Sec.*, No. 09-11484, 2010 WL 2104300, 10 (E.D. Mich. May 3, 2010) (report and recommendation of Majzoub, M.J.) (regarding ALJ's determination of last date insured and onset date, "The ALJ's finding is supported by the Field Office Disability Report and the abbreviated Field Office DIB Review Sheet.").

Thus, there is substantial evidence for the ALJ's conclusion that "[t]he medical records do not support [Plaintiff's] allegations of limitations." R at 20.

Moreover, the ALJ's RFC finding includes several express reasons for imposing certain limitations, indicative of the fact that he took her medical records and testimony into consideration. For example, the ALJ noted, "[t]o combat the effects of the claimant's medication, as well as the documented pain, I limited the claimant to only occasional decision making and only occasional changes in the work setting . . . ." R at 21. Furthermore, the ALJ stated:

- Considering the claimant's physical impairments, as evidenced by the numerous diagnostic examinations discussed above, the claimant is incapable of work at the light exertional level.

- Thus, while no overhead reaching or handling should be performed, she is capable of frequent reaching, handling, fingering, and feeling. Additionally, due to the continued cervical and lumbar issues, the claimant is incapable of lifting greater than 5 pounds at any time.

- . . . due to the persistent cervical and lumbar issues, the claimant is incapable of lifting greater than 5 pounds at any time.

R at 22.[6]

---

[6] The regulation which discusses physical exertion requirements does not address "reaching." However, it states, in part: "Sedentary work involves

c.      **Activities of Daily Living**

Plaintiff also submits that her "activities of daily living support her claim for benefits rather than negate it." DE 11 at 22.  In other words, Plaintiff maintains, "the sporadic activities of daily living, recited by the ALJ, in no way equate with an ability to perform work 8 hours a day, 5 days a week." DE 11 at 24.

In arriving at the conclusion that Plaintiffs credibility was not persuasive, the ALJ noted:

> At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, or in the claimant's testimony), the claimant reported the following ***daily activities***:  riding in a car, watching television, talking on the phone, attending doctor's appointments, shopping in stores, and being able to count change, handle a savings account, and use a checkbook or money order (Exhibit 5E[R at 288-295], testimony [R at 58-96, R at 31-57]).  Moreover, January 2012 medical records indicate that the claimant's medication helped her get through ***activities of daily living*** ([R at 751]).  The claimant's activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, and require functioning within or beyond the limited range of sedentary work identified.

R at 23 (emphasis added).

---

lifting no more than 10 pounds at a time and ***occasionally*** lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required ***occasionally*** and other sedentary criteria are met." 20 CFR § 404.1567(a)(emphasis added).

19

Here, the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence. Preliminarily, "[a]n ALJ may . . . consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("Walters admits being able to run all of his errands, walk two miles, prepare all of his meals, and drive three times a week."); *see also Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("although Warner alleged disabling pain, he also testified, consistent with the objective medical evidence, that he could manage his personal hygiene, pick a coin off a table, vacuum, drive short distances, and wash spoons and forks.").

As the Commissioner further points out (DE at 14-15), "even assuming that the specific activities the ALJ cited are not particularly illustrative of Plaintiff's physical capabilities, the ALJ also considered other evidence bearing more directly on this point." For example, as noted above, the ALJ relied upon the April 8, 2010 disability report, which notes that the interviewer did not observe/perceive difficulty with breathing, sitting, standing or walking (R at 23, 264). Also, in addition to the January 12, 2012 notes expressly referenced by the ALJ in the credibility paragraph (R 23, 779), the ALJ earlier referenced the November 15, 2012 notes (R 21, 751),

20

both of which indicate that Plaintiff's medications help her get through activities of daily living.

Thus, while the Undersigned acknowledges Plaintiff's argument that sedentary lifestyles do not always equate to sedentary RFCs, it remains that the ALJ's decision in this particular case is supported by substantial evidence.

### d.    Work history since the alleged onset date & unemployment benefits

Plaintiff alleges that she has been disabled since August 10, 2007 (R at 351), yet there is evidence in the record that Plaintiff's job actually ended late August of the following year, when Marygrove did not renew its contract or Plaintiff's company closed (R at 20, 23, 405, 529 & 700).  As pointed out by the ALJ, payroll records reflect that the claimant earned $7434.86 in 2008 (R at 17 & 23, citing R at 248-250). Furthermore, citing an unemployment query and Mich. Comp. Laws § 421.28(1)(a),[7] the ALJ noted

---

[7] In part, this statute provides:  "The requirements that the individual must report at an employment office, must register for work, must be available to perform suitable full-time work, and must seek work may be waived by the unemployment agency if the individual is laid off and the employer who laid the individual off notifies the unemployment agency in writing or by computerized data exchange that the layoff is temporary and that work is expected to be available for the individual within a declared number of days, not to exceed 45 calendar days following the last day the individual worked."  Mich. Comp. Laws § 421.28(1)(a).

that Plaintiff received unemployment compensation benefits after the alleged onset date (R 23, R 215-216).[8] Specifically, it appears that Plaintiff received unemployment benefits during the second and third quarters of 2009. R at 215-216, 225.

Thus, as the ALJ reasoned, if Plaintiff represented herself to the State of Michigan "as being able to work when she applied for and received unemployment benefits[,]" in 2009 "it bears negatively on the issue of [her] credibility" here, where she alleges that she has been disabled since 2007. R at 23; see also. R at 263-265, 210-to 14.

### e.   Conclusion

The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence in the forms of Plaintiff's medical records, activities of daily living, work history since the alleged onset date and receipt of unemployment benefits.

---

[8] During the June 23, 2011 hearing, Plaintiff testified about her receipt of unemployment benefits, the cessation of unemployment benefits, and a letter from unemployment saying that she had to pay money back on the basis that she was not able to work during a period of time. R at 76.

22

### 2.    Treating Physician Rule (Weighing of Opinion Evidence)

Plaintiff's second statement of error is that the ALJ did not give proper weight to the opinion and assessment of Plaintiff's treating medical source – Dr. Kurz.  DE 11 at 26-30.[9]

### a.    The ALJ's Standard of Review

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR § 404.1527(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

---

[9] Based on the record medical evidence, Plaintiff was treated by Dr. Kurz as early as March 9, 2010 and as late as August 8, 2012.  *See* R at 570-580 (March 9, 2010 – May 11, 2010), 759-767 (June 15, 2011 – August 8, 2012).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any

24

subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc.

Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal

quotation omitted). The United States Court of Appeals for the Sixth Circuit

has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let
> claimants understand the disposition of their cases," particularly
> in situations where a claimant knows that his physician has
> deemed him disabled and therefore "might be especially
> bewildered when told by an administrative bureaucracy that she
> is not, unless some reason for the agency's decision is
> supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The
> requirement also ensures that the ALJ applies the treating
> physician rule and permits meaningful review of the ALJ's
> application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28,
> 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is

"particularly important when the treating physician has diagnosed the

claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F.

A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

### b.   The ALJ's Analysis of the Medical Record and Opinion Evidence

Within his April 12, 2013 RFC determination, the ALJ concluded that

Plaintiff's medical records did not support her allegations of limitations. *See*

R at 20-23. After expressly discussing certain medical records from 2007

through 2012, the ALJ assigned weight to certain records.[10]  Among these

was the ALJ's assignment of little weight to Dr. Kurz's March 11, 2011

opinion that Plaintiff was incapable of any work during the period of time he

treated her and that Plaintiff was incapable of performing even a sedentary

position (*see* R at 582-676), and his August 8, 2012 opinion that Plaintiff

was disabled for another six months (R at 761).  In addition to noting that

the issue of disability is ultimately reserved to the Commissioner, the ALJ

stated, "Moreover, [Plaintiff's] activities of daily living, including shopping,

riding in a car, and watching television, are inconsistent with a complete

inability to perform work activity within the above residual functional

capacity[.]"  R at 22-23.

### i.      The ALJ Properly Discounted Dr. Kurz's Opinion

Plaintiff claims that her "ability to perform sporadic and limited

activities fail[s] to support a valid reason to discount her credibility or the

assessment and opinion issued by the treating physician."  Plaintiff also

claims that the ALJ did not address the five criteria set forth in 20 C.F.R. §

---

[10] For example, the ALJ assigned little weight to certain assessments by Dr. Abrahamson (*see* R at 419-424), partial weight to Dr. Robertson's February 4, 2009 opinion (R at 437-447), partial weight to the October 21, 2009 opinion of Dr. Plagens (R at 521) and great weight to Dr. Weingarden's January 27, 2011 evaluation (R at 696-706).

404.1527(d).  DE 11 at 27.  Citing 20 C.F.R. § 404.1527(d)(2), Plaintiff

contends that "Dr. Kurz's opinion, assessment and deposition testimony is

well supported by medically acceptable clinical and laboratory diagnostic

techniques and thus entitled to controlling weight."  In support of her

position, Plaintiff refers to many portions of Dr. Kurz's March 11, 2011

testimony (*see* R at DE 11 at 28-29), highlighting Dr. Kurz's October 14,

2010 clinical impressions that Plaintiff "still had neck pain and right arm

pain and lower back pain."  R at 643.

The Commissioner maintains that the ALJ properly evaluated the

record medical opinions.  DE 12 at 16-19.  Here, the Court should agree with

the Commissioner that the ALJ reasonably discounted Dr. Kurz's opinion,

because it was inconsistent with other substantial record evidence.  DE 12 at

17.

To begin, the ALJ expressly states he considered opinion evidence in

accordance with the requirements of 20 C.F.R. § 404.1527.  R at 19.

Moreover, to the extent Plaintiff argues that the ALJ did not consider each of

the 20 C.F.R. § 404.1527(d) factors, the ALJ adequately explained his

assignment of little weight to Dr. Kurz's March 11, 2011 and August 8,

2012 opinions (R at 22-23).  As the Sixth Circuit has instructed:

> As to the RFC or medical condition, an ALJ may only choose
> not to give a treating physician's opinion controlling weight if

she gives "**good reasons** ... for the weight give[n]," 20 C.F.R. §
404.1527(d)(2) (now in 20 C.F.R. § 404.1527(c)(2)), and if
those reasons are "**supported by the evidence** in the case record,
and [are] **sufficiently specific** to make clear to any subsequent
reviewers the weight the adjudicator gave to the treating
source's medical opinion and the reasons for that weight," SSR
96–2p, 1996 WL 374188, at *5 (1996). If the ALJ decides not
to give a treating physician's opinion controlling weight, the
ALJ may not reject the opinion, but **must apply other factors** to
determine what weight to give the opinion, such as "the length
of the treatment relationship and the frequency of examination,
the nature and extent of the treatment relationship,
supportability of the opinion, consistency of the opinion with
the record as a whole, and the specialization of the treating
source[.]" *Wilson,* 378 F.3d at 544 (citing § 404.1527(d)(2),
now in § 404.1527(c)(2)).

*Gentry v. Commissioner of Social Sec.*, 741 F.3d 708, 727 (6th Cir. 2014)

(emphasis added).

Here, in assigning little weight to Dr. Kurz's two opinions, the ALJ

has provided good reasons which are supported by the evidence and are

sufficiently specific (*see* R at 22-23).  Namely, as noted above, the ALJ

concluded that Plaintiff's activities of daily living, including shopping,

riding in a car, and watching television, were "inconsistent with a complete

inability to perform work activity within the above [RFC][.]"  In this regard,

the Commissioner notes that these activities were inconsistent with Dr.

Kurz's March 11, 2011 testimony that Plaintiff "was incapable of any work

during the entire period of time that [he] saw her."  R at 656, DE 12 at 18.

Additionally, the Commissioner points out (DE 12 at 18-19), Kurz's August

28

8, 2012 notes, which state that Plaintiff "will be disabled another 6-months . . . ." and also state that: Plaintiff had received some relief from the two cervical epidural steroid injections; there was no evidence of tenderness, spasm or masses in the cervical, thoracic, or lumbosacral spine; her right shoulder range of motion was limited but somewhat improved; full strength in the major muscle groups and normal and symmetric deep tendon reflexes. R at 21, 760-761.

> **ii.    The ALJ Properly Considered the Other Medical Opinions and the Record as a Whole**

Furthermore, the medical record contains assessments of Plaintiff's ability to work by other treating or examining doctors.  For example, there are records from Dr. Abrahamson (R at 405-433, 707-740).  The ALJ gave little weight to Dr. Abrahamson's November 2007, December 2007 and January 2008 opinions that Plaintiff was to remain off work (R at 419-424) as durational, noting that Dr. Abrahamson placed Plaintiff on light duty on February 21, 2008 (R at 417-418) and contending that "there are no further indications of Dr. Abrahamson finding [Plaintiff] unable to perform work activity."  R at 22.  The ALJ also gave little weight to Dr. Abrahamson's February and March 2008 placement of Plaintiff on light duty (R at 414-418) and, instead, relied upon diagnostic evidence to determine that Plaintiff

was incapable of light exertional level work.  R at 22.  Thus, the ALJ

assigned even *more restrictions* in Plaintiff's RFC than had Dr.

Abrahamson's February and March 2008 placement, by categorizing her

work capabilities as sedentary, rather than light duty.[11]

Also, there are Dr. Robertson's February 4, 2009 notes from an

independent medical examination (R at 437-447), which state that Plaintiff

deserved a functional limitation (437-447).  The ALJ gave this opinion

---

[11] "To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567.

partial weight, because it occurred prior to Plaintiff's June 15, 2010 right shoulder surgery (R at 691-693) and the June 30, 2010 post-op visit (R at 680-681). Although the ALJ acknowledged that Plaintiff should not perform any overhead reaching or handling, the ALJ further observed that Plaintiff was capable of frequent reaching, handling, fingering, and feeling. Also, the ALJ acknowledged Plaintiff's continued cervical and lumbar issues, noting that Plaintiff was incapable of lifting more than 5 pounds at any time. R at 22.

Furthermore, it appears that Plaintiff was seen at Dr. Plagens' office on three occasions (R at 521-526), and Dr. Plagens' notes from the October 21, 2009 visit list Plaintiff's work restrictions as including "no reaching or lifting overhead and no lifting over ten pounds[,]" R at 521. The ALJ gave partial weight to this opinion and, in so doing, reiterated the five pound lifting limitation and restricted Plaintiff from overhead reaching. R at 22.

Finally, the January 27, 2011 independent orthopedic evaluation of Dr. Weingarden states that, with respect to work activities, Plaintiff should be restricted to "no lifting over five pounds and no work above shoulder level with the right upper extremity[,]" R at 696-706. In attributing great weight to this opinion on the basis that it was consistent with the record as a whole – one of the 20 C.F.R. § 404.1527(c) factors - the ALJ stated:

> . . . although the claimant is restricted in her functional abilities, the medical evidence indicates that two weeks after her SLAP procedure, she presented to Dr. Shapiro without any complaints ([R at 680-681, 691-693]).  Additionally, on November 15, 2012, the claimant indicated that her medications continued to help her with her activities of daily living (R at 779-782).  Thus, limiting the claimant to a 5 pounds restriction is appropriate, considering the evidence as a whole.

R at 22.

Thus, the Court should conclude that the ALJ appropriately weighed the opinion evidence in this case and consider the record as a whole. The ALJ did not err by assigning little weight to the above-cited March 11, 2011 and August 8, 2012 opinions of Dr. Kurz, and he provided good reasons for the weight he assigned to the opinions of the other treating sources.

### 3.    Challenge to RFC

Plaintiff's third statement of error appears to challenge the ALJ's Step 5 determination but, in substance, challenges the ALJ's Step 4 finding. Plaintiff argues that the VE's 2013 testimony demonstrates that there were no jobs Plaintiff could perform if she required a cane while standing.  DE 11 at 30-32.  Within this argument, Plaintiff submits that she "requires the use of a cane at all times when standing[;]" "would not be able to frequently reach, handle and finger frequently while exercising the sit/stand option included in the ALJ'[s] hypothetical question[;]" and "would be unable to frequently finger and handle while using a cane to stand."

It is the Commissioner's position that substantial evidence supports the ALJ's Step 5 determination.  DE 12 at 20-23.  More importantly, the Commissioner also contends that Plaintiff's challenges to the ALJ's Step 5 determination are, really, "challenges to the ALJ's RFC assessment . . . ." DE 12 at 20.

The Undersigned agrees and conclude that, in her third argument, Plaintiff is really challenging the ALJ's conclusion regarding Plaintiff's need for a cane.  Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e).  "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).   However, the burden of proof at the Step 4 RFC stage rests with the claimant. *Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)

As noted above, the ALJ's RFC finding was limited to "frequent, but not constant, handling, fingering, and feeling[,]" and "jobs *allowing use of a handheld assistive device* for prolonged ambulation or uneven terrain[.]"  R at 19 (emphasis added).  This is a fair and supportable conclusion. Plaintiff having only cited to VE Holder's March 21, 2013 testimony (R at 46-54), the Dictionary of Occupational Titles' description for a sorter (DE 11 at 35-38), the Commissioner's Medical-Vocational Guidelines, and the Appeals Council's September 27, 2012 remand decision (R at 126-129), Plaintiff has not demonstrated that the ALJ's RFC determination was not supported by substantial evidence.

Moreover, as the Commissioner notes (DE 12 at 21-22), Plaintiff has not "demonstrated that the record compels a finding that she requires a cane *at all times when standing*."  Plaintiff points out in her brief, and testified at the hearing, that she was prescribed a cane and has used one for the past two years. (DE 11 at 17; R 37-40). She does not identify the physician who gave this prescription, and did not testify that the cane is required at all times for *walking,* let alone for *standing.* She does not identify medical records in support of this alleged limitation, but instead thrice states in her brief that, "It is submitted that [she] requires the use of a cane at all times when standing." DE at 23, 17, 25. Each time that she so "submits," she noticeably

fails to provide any record citation.[12] Plaintiff has failed to develop or

otherwise identify a record which supports her claim that she must be

holding a cane at all times when standing, and it is not the Court's

responsibility in a motion for summary judgment under Rule 56 to "comb

though the record" in search of factual support for a party's position.

*Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000).  The same

is true to the extent Plaintiff is challenging the ALJ's handling and fingering

limitation.  As the Commissioner correctly states, "Plaintiff has not

explained why she believes the record supports this particular limitation,

much less demonstrated that the record compels it."  DE 12 at 22-23.

Plaintiff has failed to prove that the ALJ's RFC determination was not

supported by substantial evidence.  As noted above, the ALJ's sedentary

RFC finding included several specific limitations (R at 19), and the ALJ

gave great weight to Dr. Weingarden's January 27, 2011 independent

orthopedic evaluation (R at 22, 696-706), which noted:

> In regard to work activities, I would place her on a restriction of
> no lifting over 5 pounds and no work above shoulder level with
> the right upper extremity.  These would be related to the right
> shoulder as she does have difficulty in lifting the right shoulder

---

[12]She also points out that her attorney "interjected"at the hearing to make
note on the transcript that she had a cane with her. DE 11 at 17; R 40. The
fact that she had a cane with her at the hearing does not answer the question
of whether she requires it at all times for standing, nor does her attorney's
statement count as testimony.

> above 90 degrees.  These would be temporary restrictions until
> she fully rehabilitates from the shoulder procedure.

R at 706.  Thus, the ALJ's conclusion that Plaintiff has the RFC to perform

sedentary work, except that she "can only lift up to 5 pounds; must be able

to alternate between sitting and standing at will, but approximately every 15

minutes…; no constant (i.e. frequent) reaching; no overhead reaching or

handling; frequent, but not constant, handling, fingering, and feeling; limited

to jobs allowing use of a handheld assistive device for prolonged ambulation

or uneven terrain…."R at 19, is supported by Dr. Weingarden's evaluation.

In light of this, any challenge to the ALJ's justifiable use of this RFC

in forming his hypothetical at Step 5 would likewise be unavailing.   *Ealy v.*

*Commissioner of Social Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) ("In order for

a vocational expert's testimony in response to a hypothetical question to

serve as substantial evidence in support of the conclusion that a claimant can

perform other work, the question must accurately portray a claimant's

physical and mental impairments."). Since the hypothetical posed to the VE

does accurately portray Plaintiff's physical and mental impairments, Plaintiff

is not entitled to remand on this basis.

## G.   Conclusion

In sum, from a review of the record as a whole, I conclude that

substantial evidence supports the ALJ's decision denying benefits.  I find

that the ALJ performed a careful and comprehensive analysis of the entire
record, making findings and conclusions which were well within the range
of his authority and which should not be disturbed here, particularly under
this Court's deferential standard of review. Accordingly, it is
**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary
judgment (DE 11), **GRANT** Defendant's motion for summary judgment
(DE 12), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report
and Recommendation, but are required to file any objections within 14 days
of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and
Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of
any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.
Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing
objections that raise some issues but fail to raise others with specificity will
not preserve all the objections a party might have to this Report and
Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390,
401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d
1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any
objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

/s/Anthony P. Patti
ANTHONY P. PATTI
UNITED STATES MAGISTRATE JUDGE

Dated: June 24, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 24, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
HOLLY A. MONDA, in the absence
of MICHAEL WILLIAMS
Case Manager